**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HELENE COHEN–GILBERT, as the Personal Representative of the Estate of BARBARA P. COHEN, Deceased; ROBERTA DICKERSON, individually; and ANA RAWALJI, individually, )))))<br><br>Plaintiffs, ))<br><br>v. )) | |

HELENE COHEN–GILBERT, as the )
Personal Representative of the Estate )
of BARBARA P. COHEN, Deceased; )
ROBERTA DICKERSON, individually; )
and ANA RAWALJI, individually, )
    )
    Plaintiffs, )
    )
    v. )    Case No.:  21-cv-5849
    )
PETERSON PARK ASSOCIATES, LLC, )
an Illinois Limited Liability Company )
doing business as PETERSON PARK )
HEALTH CARE CENTER; and )
PPA, LTD., an Illinois Corporation, )
    )
    Defendants. )

## <u>COMPLAINT</u>

Plaintiff Helene Cohen-Gilbert ("Plaintiff Cohen-Gilbert"), not individually, but as

the Personal Representative of the Estate of Barbara Cohen, Deceased; Roberta Dickerson

("Plaintiff Dickerson") and Ana Rawalji ("Plaintiff Rawalji,") (collectively referred to as

herein as the "Plaintiffs"), by their attorneys, Jennifer M. Sender, Andrés J. Gallegos and

Andrés J. Gallegos II of Robbins, Salomon & Patt, Ltd., for their complaint against

Defendants Peterson Park Associates, LLC, an Illinois Limited Liability Company

("Peterson Park Associates") doing business as Peterson Park Health Care Center, and

PPA, Ltd., an Illinois Corporation ("PPA," which together with Peterson Park Associates

are sometimes referred to herein as the "Defendants"), states as follows:

4094130 (15041.1)

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Counts I, II, V - VIII of this action pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. 18116. This Court has supplemental jurisdiction over Counts III and IV of this action pursuant to 28 U.S.C. § 1367.  Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).  Defendants resides in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

3.      Plaintiff Cohen-Gilbert is the adult daughter and Personal Representative of the Estate of Barbara Cohen, Deceased. Plaintiff Cohen-Gilbert was appointed by the Cook County Probate Court as the Personal Representative of the Estate of Barbara Cohen, Deceased, on April 7, 2021. Plaintiff Cohen-Gilbert resides in McKinney, Texas.

4.      Barbara Cohen ("Mrs. Cohen"), deceased, was 84 years old at the time of her demise. Mrs. Cohen was profoundly deaf since birth and had a very limited ability to verbalize speech and read lips. Mrs. Cohen's primary means of communication was through American Sign Language ("ASL"). Mrs. Cohen also suffered from glaucoma, resulting in low-vision; cervical disc degeneration, dementia and other comorbidities. Because of her low-vision, Mrs. Cohen also the required the use of specialized auxiliary

aids and services such as a support service provider ("SSP"),[1] a certified deaf interpreter ("CDI") or Deaf caregivers.[2] Mrs. Cohen was a person with a disability within the meaning of all applicable statutes. At the time of her demise, on April 6, 2020, Mrs. Cohen resided in Chicago, Illinois at Defendants' skilled nursing facility.

5.      Plaintiff Dickerson is profoundly deaf and has been since birth. Since on or about 2012, Plaintiff Dickerson has served on and off as a Deaf aid for Mrs. Cohen. She was hired by Plaintiff Cohen-Gilbert as a Deaf aid to provide care for Mrs. Cohen at Defendants' nursing home. Plaintiff Dickerson's primary and predominant means of communication is through ASL. Plaintiff Dickerson is able to write and read simple sentences in English but cannot read or understand any medical terminology or medical jargon or complex and long sentences. She cannot articulate speech. She has a very limited ability to lip read conversational and predictive words and phrases (*e.g.,* salutations like "good morning," good afternoon," or "good evening," and phrases and short sentences like, "how are you," "how are you today," "how are you feeling," and similar short sentences and phrases common and predictive in social conversation). Plaintiff Dickerson is a person with a disability within the meaning of all applicable statutes. Plaintiff Dickerson resides in Glendale Heights, Illinois.

---

[1] A Support Service Provider is a specially trained individual for people who are deaf-blind. This empowers the deaf-blind person to make decisions for themselves based on the visual, environmental and social information provided by the SSP. Human guide assistance is another responsibility. Additionally, the SSP is responsible to facilitate communication for the deaf-blind person. HKS: What is an SSP? (helenkeller.org)

[2] Certified Deaf Interpreters are deaf or hard of hearing individuals and have demonstrated knowledge and understanding of interpreting, deafness, the Deaf community, and Deaf culture. Holders of this certification have specialized training and/or experience in the use of gesture, mime, props, drawings and other tools to enhance communication. Holders of this certification possess native or near-native fluency in American Sign Language and are recommended for a broad range of assignments where an interpreter who is deaf or hard-of-hearing would be beneficial. *See* Registry for the Interpreters of the Deaf, Inc., Certified Deaf Interpreter | Registry of Interpreters for the Deaf (rid.org).

3

6.     Plaintiff Rawalji is profoundly deaf and has been since birth. Since on or about 2007, Plaintiff Rawalji served as a Deaf aid to Mrs. Cohen. She was hired by Plaintiff Cohen-Gilbert as a Deaf aid to provide care for Mrs. Cohen at Defendants' nursing home. Plaintiff Rawalji's primary and predominate means of communication is through ASL. Plaintiff Rawalji has a limited ability to communicate effectively by reading and writing English. She cannot articulate speech nor lip read. Plaintiff Rawalji is a person with a disability within the meaning of all applicable statutes. Plaintiff Rawalji resides in Chicago, Illinois.

7.     Defendant Peterson Park Associates is an Illinois limited liability company, that owns and operates a skilled nursing and intermediate care facility, Peterson Park Health Care Center (the "Facility"), in Chicago, Cook County, Illinois. The Facility offers and advertises its comprehensive spectrum of skilled nursing care, enrichment programs, and rehabilitative and clinical services. Among the program offerings, the Facility offers cultural programming, which is tailored to the needs of a specific culture, including, but not limited to, culturally sensitive group activities, religious services, television programming, recreation activities, and limited English proficiency translation services.

8.     Defendant Peterson Park Associates is a recipient of federal financial assistance from the United States Department of Health and Human Services, Center for Medicare and Medicaid Services, as a result of its enrollment as a skilled nursing and intermediate care facility in the Medicaid program. In its Medicaid cost report filed with the Illinois Department of Healthcare and Family Services, for the calendar year ending December 31, 2018, Defendant Peterson Park Associates reported having received just

4094130 (15041.1)

over $11 million in Medicaid reimbursements.[3] As a result thereof, Defendant Peterson Park Associates is a covered entity under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 704, and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

9.     Defendant PPA, Ltd. is an Illinois Corporation, and serves as the manager of Defendant Peterson Park Associates. PPA has its principal place of business in Skokie, Illinois.

## DEFENDANTS' CONDUCT

10.     "Effective communication" is critical in virtually all medical contexts. Without it, a caregiver cannot obtain complete medical histories; assess symptoms; provide for patient rights, including informed consent; develop accurate diagnoses and prognoses; develop, explain and administer procedures, medication and treatment generally; provide counseling; or otherwise ensure that residents' needs are appropriately met.  Failure to ensure that Deaf[4] and hard of hearing patients can effectively communicate threatens the quality of care and, even when treatment ultimately is successful, violates legally protected rights.

---

[3] The 2018 cost report is the most recent report publicly available on the Illinois Department of Healthcare and Family Services' website. *See,* Medical Providers Cost Reports, available at: peterson_park_hc_ctr_2018_0024463.xlsx (illinois.gov)

[4] The word "Deaf" is intentionally capitalized. In the Deaf and hard of hearing community, there are many ways to label deafness, and different individuals have different personal preferences. Generally, the word "deaf" with a lowercase "d" refers to the audiological condition of not being able to hear. Carol Padden & Tom Humphries, *Deaf in America: Voices from a Culture* 2 (1988). The term "Deaf" on the other hand refers to a community of individuals who use American Sign Language ("ASL") as their primary means of communication. *See, id.* Although the term "Deaf" has been a defining label for this community, the Deaf community is filled with individuals who have a varying range of hearing abilities. *See id.* at 4. These individuals consider themselves to be a part of the culturally Deaf community. *See id.* at 25.

4094130 (15041.1)

11.     Defendants failed to provide Mrs. Cohen, a person with a disability, the same quality of care as other residents and deprived her of the opportunity to participate in her care and rehabilitation on the basis of her disability. This unequal treatment occurred because, among other things, Defendants required Mrs. Cohen to lip read, or required her to utilize a whiteboard to write and read words in English during numerous complex and sufficiently lengthy conversations. Defendants did so even though it knew that English was not Mrs. Cohen's primary and predominant language, it knew of her low-vision and despite Plaintiff Cohen-Gilbert's repeated requests that Defendants provide Mrs. Cohen with linguistic access, which is the delivery of Defendants' services in a manner that considers Mrs. Cohen's deafness, low-vision and Deaf culture. Providing Mrs. Cohen linguistic access included providing her with special auxiliary aids and services, like a SSP and CDI, in addition to an on-site ASL interpreter, to facilitate her ability to effectively communicate with Defendants' professional and support staff and thereby allow her to participate in her own rehabilitation. The provision of auxiliary aids and services also included presenting written materials, particularly "vital" documents, in a manner that is understandable to her and to monitor, and adjust as needed, the language assistance provided. In a nursing and rehabilitation facility, examples of circumstances when the communication may be sufficiently lengthy or complex so as to require an ASL interpreter include (collectively, "Vital Encounters"):

    A.    When conducting a comprehensive assessment of a resident's needs, strengths, goals, life history and preferences;

    B.    Developing and implementing the resident's patient-centered plan of care, including establishing expect goals and outcomes of care;

    C.    Informing the resident of his or her rights to participate in his or her plan of care, rights and responsibilities;

6

D.     Discussing a resident's symptoms and medical condition, medications, and medical history;

E.     When conducting periodic assessments of a resident;

F.     Providing a diagnosis and recommendation for treatment;

G.     Communicating with a resident during treatment, including physical and occupational therapies, testing procedures, and during physician's rounds;

H.     Obtaining informed consent for treatment and therapies;

I.     Providing instructions for medications, post-treatment activities and follow-up, treatments;

J.     Providing mental health services, including group or individual counseling for residents and family members;

K.     Discussing powers of attorney, living wills and/or complex billing and insurance matters;

L.     During educational presentations;

M.     Discussing discharge planning and discharge instructions; and

N.     When providing religious services and spiritual counseling.

12.     Defendants acted intentionally and with deliberate indifference when they failed to provide the benefit of their services, programs, and activities to Mrs. Cohen and failed to provide appropriate auxiliary aids and services to Mrs. Cohen to effectively communicate with her during nearly all Vital Encounters.

13.     Defendants acted intentionally and with deliberate indifference when they failed to provide linguistic access and linguistic presence (*i.e.,* impartial, complete and accurate interpretation), including appropriate auxiliary aids and services, to Mrs. Cohen to allow for effective communication between her and Defendants' doctors, nurses, counselors, social workers, therapists, and others (collectively, the "Facility's Personnel") and to participate in the Facility's social programming events.

7

14.     Defendant Peterson Park Associates denied Mrs. Cohen full and equal access to their services and denied Mrs. Cohen the equal opportunity to participate in her own healthcare and rehabilitation in violation of the Rehabilitation Act and Section 1557 by:

A.     Failing to provide adequate and effective means of communication with the Facility's Personnel;

B.     Failing to adequately train the Facility's staff on linguistic access and linguistic presence for persons who are Deaf to include, but not limited to understanding the different linguistic access requirements for simple and short conversations versus for Vital Encounters;

C.     Failing to provide her equal access to their programs and services; and

D.     Failing to establish comprehensive policies and procedures to meet their federal legal mandates to achieve effective communications.

## MRS. COHEN'S EXPERIENCE

15.     Mrs. Cohen was profoundly deaf since birth. Her primary and predominant language was American Sign Language ("ASL"). At the time of her admission to Defendants' Facility, she suffered from a number of comorbidities, including, dementia, glaucoma, cervical disc degeneration, osteoporosis, among other conditions. She had a diminished and confused ability to lip read simple words in short conversations supported with visual props. As a result of her dementia and glaucoma, Mrs. Cohen required special auxiliary aids and services, in addition to an ASL interpreter, like a SSP and a CDI to allow her to communicate effectively with the Facilities' Personnel.  Absent an ASL interpreter and CDI, she could not communicate fluently, engage in substantive conversation with Facility Personnel and could not participate in the Facility's programs and services, resulting in isolation.

4094130 (15041.1)

16.     Mrs. Cohen became a resident of the Facility on January 13, 2020, and remained at the Facility for 84 days, until her demise on April 6, 2020. She was transferred to the Facility from The Grove of Evanston, a rehabilitation facility in Evanston, Illinois, where she was recovering from hip surgery resulting from a fall at The Grove on or about November 26, 2019. The surgery was performed at St. Francis Hospital, in Evanston Illinois. Upon being admitted to the Facility, her admission records identified her as having cervical disc degeneration, major depressive disorder, single episode unspecified; paranoid personality disorder, glaucoma, unspecified hearing loss, bilateral; dysphagia, unspecified dementia with behavioral disturbance, a history of falling, and Deaf nonspeaking, and other conditions.

17.     Throughout Mrs. Cohen's 84 day stay at the Facility, Mrs. Cohen was required to lip read or use a whiteboard with the Facility's Personnel during numerous vital encounters ("Vital Encounters"), including, inter alia, the following:

A.     During initial physical, nursing, social services, recreation, dietary assessments upon admission;

B.     During the development of their legally required patient-centered plan of care with their interdisciplinary team;

C.     During approximately 200 one-on-one periodic social services, nursing, dietary and recreation assessments and evaluations;

D.     During approximately 83 therapeutic exercise or therapeutic activities session;

E.     During approximately 8 one-on-one nursing evaluations discussing Mrs. Cohen's medical condition and symptoms; and explaining results of tests;

F.     When participating in approximately 34 nursing and social services counseling and educational presentations; and

G.     During approximately 2 one-on-one mental health evaluations and services with a physician and/or social worker.

9

4094130 (15041.1)

18.     "Vital Encounters" are interactions between a Deaf patient and care providers that the Department of Justice deems are so critical to the Deaf patients' care and treatment that the use of specialized auxiliary aids and services, like an SSP, CDI and on-site ASL interpreters should be provided.[5]

19.     Defendants treated Mrs. Cohen's deafness as a condition requiring rehabilitation as opposed to a disability requiring accommodation or a cultural identity requiring membership in a community. To address Mrs. Cohen's "impaired verbal communication," the Facility established as a goal in her initial care plan for her to be able to communicate her feelings and thoughts to staff via sign language through "interventions." The "interventions" included having Facility personnel speak loudly, but not shout; talk face-to-face to allow her to see the speaker's lips; talk slowly and clearly; minimize background noise; work with speech therapists; and learn to read her body language.

20.     The Facility provided Mrs. Cohen with an on-site ASL interpreter for her initial care plan, and for three other Vital Encounters out of the over 280 Vital Encounters that she had with physicians, nurses, physical therapists, occupational therapists, speech therapists, social workers, psychologists and psychiatrists in the 84 days that she was there.

21.     For the overwhelming number of Vital Encounters, Mrs. Cohen was required to attempt to lip read with her low-vision, which she could not; and was provided with a whiteboard for both the staff and her to write words on, which was ineffective for

---

[5] *See* multiple settlements between skilled nursing facilities and the Department of Justice under its Barrier Free Health Care Initiative, Barrier-Free Health Care Initiative - USAO Agreements (ada.gov)

4094130 (15041.1)

Mrs. Cohen given her low-vision coupled with her dementia. Papers that had different photographs representing different concepts like eating, sleeping and bathing for her to point to were available in her bedroom, but had limited utility and could not be used for her to have any meaningful or extended dialogue with her providers.

22.     Mrs. Cohen's videophone, which was essential for her to communicate with Plaintiff Cohen-Gilbert, did not always function at the Facility because of poor Internet connection and the Facility's Internet firewall blocked access. Plaintiff Cohen-Gilbert informed the Facility's administrators of the poor Internet connection and the firewall limitations resulting in Mrs. Cohen not being able to utilize her videophone. However, not thinking the problem was with the Internet connection or its firewall, Defendant Peterson Park Associates acquired for its Facility an iPad to be used by Mrs. Cohen to place and receive videophone calls from Plaintiff Cohen-Gilbert. That, however, also did not work effectively because of poor Internet connection and the firewall limitations. In addition, the iPad was locked in the Facility's administrative offices and the iPad had a security access code, which Facility Personnel quite often did not know and, therefore, the iPad was seldom utilized. Defendant Peterson Park also tried utilizing the iPad to connect with an ASL interpreter through video remote interpreting ("VRI"), but the poor Internet connectivity and the Internet firewall rendered it useless. As a result, when the City of Chicago initiated its shelter in place requirements in response to the COVID–19 pandemic on or about March 2020, Mrs. Cohen had no manner by which to communicate directly with Plaintiff Cohen-Gilbert or her caregivers.

23.     Plaintiff Cohen-Gilbert complained profusely to the Facility's administrators and insisted that her mother be provided with linguistic access, to include,

11

*inter alia*, specialized auxiliary aids and services, like a SSP, CDI, an on-site ASL interpreter and Deaf caregivers, like those Plaintiff Cohen-Gilbert hired herself. Plaintiff Cohen-Gilbert repeatedly informed those administrators of their obligations to provide linguistic access and linguistic presence under the Americans with Disabilities Act. In addition, Plaintiff Cohen-Gilbert recommended the Facility provide for its employees training on Deaf culture and communicating with Deaf patients.

24.     The Facility acted upon the latter, engaging a Deaf culture consultant while Mrs. Cohen was a resident there to provide two in-service training sessions with the Facility's staff. The consultant provided the staff with basic sign language job aids which consisted of sign language diagram/photographs on paper for them to either replicate when communicating with Mrs. Cohen or to point to in their interactions with her. In one of those two in-service training sessions, the consultant also provided the staff with basic sign language training.

25.     In lieu of providing Mrs. Cohen with on-site ASL interpreters, a CDI or functional VRI to communicate with Facility Personnel over the course of her 84 days residency at the Facility, Defendants opted instead to provide their staff with, at most, 2 hours of basic ASL training, giving lip service to their federal mandates to provide Mrs. Cohen with linguistic access, including, but not limited to licensed ASL interpreters and CDIs, among other auxiliary aids and services, in order to achieve effective communication.

26.     In response to Plaintiff Cohen-Gilbert's frequent admonishments and requests for the Facility to provide Mrs. Cohen with linguistic access, a staff member wrote

in Mrs. Cohen's nursing home records that they were "over accommodating" her by teaching staff ASL basics and purchasing an iPad.

27. As Mrs. Cohen could not communicate effectively with the Facility's Personnel, Plaintiff Cohen-Gilbert hired two Deaf attendants to assist Mrs. Cohen with certain of her activities for daily living. Those attendants were present from the first date that Mrs. Cohen was admitted to the Facility until the middle of March. Plaintiff Cohen-Gilbert could no longer afford to pay for those attendants beyond the middle of March.

28. Defendants misidentified Mrs. Cohen's attendants as her interpreters, but they were not. As they were both Deaf, they each faced the same constraints on communicating effectively with the Facility's Personnel as did Mrs. Cohen. After those two assistants left caring for Mrs. Cohen in the middle of March 2020, Mrs. Cohen fell from her wheelchair on March 23, 2020, resulting in a laceration to her forehead. She fell again from her wheelchair on April 4, 2020, attempting to transfer herself independently from her wheelchair onto her bed, resulting in a laceration to her left eyebrow. For the April 4 incident, the Facility's staff recorded in Mrs. Cohen's records that they were unable to assess her level of pain because of Mrs. Cohen's inability to communicate. She was transferred by ambulance to a hospital for observation after both incidents.

## PLAINTIFF DICKERSON'S EXPERIENCES

29. From on or about January 13, 2020 to March 16, 2020, Plaintiff Cohen-Gilbert hired Plaintiff Dickerson to serve as Mrs. Cohen's Deaf aid at the Facility. She was hired by Plaintiff Cohen-Gilbert to provide daily care and assistance to her mother at the Facility because Plaintiff Cohen-Gilbert was fearful that her mother's inability to

4094130 (15041.1)

communicate with Defendants' staff would result in her daily needs being ignored. Plaintiff Dickerson was responsible for assisting Mrs. Cohen getting in and out of bed, transferring to and from her wheelchair, assisting with dressing and undressing, medication management, assistance eating and with other of Mrs. Cohen's activities of daily living. She also escorted Mrs. Cohen to different meetings, therapies, and doctors' appointments within and outside of the Facility.

30.     Plaintiff Dickerson worked alone with Mrs. Cohen approximately 4 to 5 hours per day, 3 to 4 times per week. During her time working as a Deaf aid for Mrs. Cohen at the Facility, Plaintiff Dickerson was  forced to exchange written notes with Defendants' staff, and to lip read when communicating with Defendants' doctors, nurses, and other staff due to the absence of appropriate auxiliary aids and services to allow her to effectively communicate. As a result, Plaintiff Dickerson was unable to understand detailed conversations regarding Mrs. Cohen's health and plan of care.

31.     Plaintiff Dickerson made several requests for an interpreter to be present during complex medical conversations, which were ignored. Instead, Defendants' staff encouraged her to try her best. Plaintiff Dickerson was also present and directly observed specific instances when Mrs. Cohen requested an ASL interpreter. Requesting the presence of an ASL interpreter became futile over time so Plaintiff Dickerson eventually stopped asking. She then was left to communicate by exchanging written notes and occasionally using her own iPad to type words for Defendants' staff to read. In addition, she was compelled to attempt to lip read, which was a challenge as her lip reading ability is limited and with a multicultural staff, certain of the Defendants' staff's accents made it even more

14

difficult to lip read. Plaintiff Dickerson could not understand medical jargon used by the nursing staff and physicians, whether in writing or when having to attempt to lip read.

32.     Plaintiff Dickerson's experiences in requesting an ASL interpreter were even more stressful and frustrating as she witnessed Defendant readily having foreign language speaking interpreters present, but not ASL interpreters. It made her feel marginalized and alienated. In addition, given the absence of appropriate auxiliary aids and services, Plaintiff Dickerson, together with Plaintiff Cohen-Gilbert requested that Defendants' staff utilize a red book, as a means to compensate for the absence of auxiliary aids and services, to record the days and times when Mrs. Cohen ate, took medication, and for documenting other information related to her care and well-being. There were numerous days when Plaintiff Dickerson arrived at the Facility to take care of Mrs. Cohen when there was nothing written in the red book. On those days, Plaintiff Dickerson had no indication whether Mrs. Cohen was fed, received her medication or was attended to.

**PLAINTIFF RAWALJI'S EXPERIENCES**

33.     From on or about January 13, 2020 to March 16, 2020, Plaintiff Cohen-Gilbert hired Plaintiff Rawalji to serve as Mrs. Cohen's Deaf aid at the Facility. Plaintiff Cohen-Gilbert hired her to provide daily care and assistance to Mrs. Cohen at the Facility as Plaintiff Cohen-Gilbert was fearful that her mother's inability to communicate with Defendants' staff would result in her daily needs being ignored and that she would not otherwise have communication access. Plaintiff Rawalji was responsible for assisting Mrs. Cohen getting in and out of bed, transferring to and from her wheelchair, assisting with dressing and undressing, medication management, assistance eating and with other of Mrs. Cohen's activities of daily living. She also escorted Mrs. Cohen to different meetings,

4094130 (15041.1)

therapies, doctor's appointments within and outside of Defendants' Facility. She worked alone with Mrs. Cohen approximately 4 to 5 hours per day, 3 to 4 times per week and on certain weekend days as well. Plaintiff Rawalji and Plaintiff Dickerson staggered days during the week in which they cared for Mrs. Cohen. On weekend days when she did work, Plaintiff Rawalji observed Mrs. Cohen unattended, often with soiled diapers and stale food in her room.

34.     Plaintiff Rawalji asked for an on-site ASL interpreter on several occasions not only for herself but for Mrs. Cohen. When Plaintiff Rawalji asked Defendants' staff for interpreters, the staff would say "yes" or nod their head up and down, but no interpreter was ever provided in response to her requests. As a result, Plaintiff Rawalji was required to communicate with Defendants' staff by writing simple sentences on loose-leaf paper and gesturing back and forth. Defendants' staff communicated with Plaintiff Rawalji by requiring her to lip read and by gesturing. Certain of Defendants' staff were multicultural and spoke English with distinct accents, which, even if Plaintiff Rawalji knew how to lip read, which she does not, it would have made lip reading extremely difficult. The use of written notes was not effective as she did not understand most of what the staff wrote. When notes were used, they were limited to one or two words at a time and done very quickly. When she did not understand what was written, she would write the words "don't understand" and communicate the same through sign language or facial expression while pointing to the words "don't understand" that she wrote on paper. Plaintiff Rawalji had only a superficial understanding of conversations with Defendants' staff.

35.     The lack of ASL interpreters made Plaintiff Rawalji feel lost, disappointed, frustrated, and angry when she was not able to communicate. She did not share her feelings

and she tried to hide them from Mrs. Cohen as she wanted to stay positive and not allow her emotions to have a negative impact on Mrs. Cohen's mental health. Plaintiff Rawalji recalls several conversations with Mrs. Cohen where Mrs. Cohen expressed her own anger at not being provided with interpreters.

**COUNT I**
**VIOLATION OF THE REHABILITATION ACT**
**29 U.S.C. § 704**
(On behalf of Plaintiff Cohen-Gilbert as the Personal Representative of
the Estate of Barbara P. Cohen against Defendant Peterson Park Associates)

36.     Plaintiff Cohen-Gilbert incorporates by reference paragraphs 1 to 35 above.

37.     Plaintiff Cohen-Gilbert brings this action under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794. Mrs. Cohen was intentionally and deliberately denied full and equal enjoyment of Defendant Peterson Park Associates' healthcare and rehabilitation services through Defendant's failure to comply with Section 504.

38.     Defendant Peterson Park Associates receives federal financial assistance in the form of reimbursement from the Medicaid programs as described herein and is therefore subject to the antidiscrimination provisions of Section 504.

39.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*, and its implementing regulations, 45 C.F.R. § 84.4(a), which provides in pertinent part as follows:

A.     "No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C.§794(a);

17

B.    An individual with a disability is "otherwise qualified" to participate in covered programs and activities if that individual "meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(l)(4);

C.    "Program or activity" means all of the operations of an entire corporation if assistance is extended to such corporation as a whole or the corporation is principally engaged in the business of providing health care services and any part of the corporation receives federal financial assistance. 29 U.S.C. §794(b)(3)(A)(i) and (ii); 45 C.F.R. §84.3(k)(3)(i)(A) and (ii);

D.    "Federal financial assistance" means "any grant, loan, contract…or any other arrangement by which the Department [of Health and Human Services] provides or otherwise makes available assistance in the form of… [f]unds." 45 C.F.R. §84.3(h);

E.    "No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies." 45 C.F.R. §84.21; and

F.    "In providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services… (3) Provide a qualified handicapped person with benefits or services that are not as effective as the benefits or services provided to others… (4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons." 45 C.F.R. § 84.52(a).

40.    Defendant Peterson Park Associates' intentional and deliberate acts and omissions alleged herein violated Section 504 and its implementing regulations in one or more of the following respects:

A.    Defendant discriminated against Mrs. Cohen by denying her the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility;

B.    Defendant discriminated against Mrs. Cohen by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

C. Defendant discriminated against Mrs. Cohen by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments;

D. Defendant discriminated against Mrs. Cohen by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Mrs. Cohen where such modifications would not fundamentally alter the nature of the goods, services or facilities; and

E. Defendant discriminated against Mrs. Cohen by deliberately and intentionally failing to provide her with linguistic access and linguistic presence, including, but not limited to appropriate auxiliary aids and services, such as a SSP, CDI, on-site ASL interpreters, operable and effective VRI or other means to effectively communicate with Mrs. Cohen, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden, despite knowing the failure to do so would likely result in harm to Mrs. Cohen's federally protected right and failed to act upon that likelihood.

41. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and that the rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §2000(d) *et seq.*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

42. Plaintiff Cohen-Gilbert is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. §794(a), as Defendant Peterson Park Associates' conduct inflicted injury and damages upon Mrs. Cohen, including loss of a civil right.

**WHEREFORE**, Plaintiff Cohen-Gilbert prays for the following relief against Defendant Peterson Park Associates:

4094130 (15041.1)

A. A declaration that Defendant operated in a manner which discriminated against Mrs. Cohen who required specialized auxiliary aids and services such as a SSP, CDI, ASL interpreters, on-site or through VRI or other effective means to communicate;

B. An award of compensatory monetary damages;

C. An award of reasonable attorneys' fees and costs; and,

D. Such other relief as the Court deems just.

**COUNT II**
**Violation of Section 1557 of the Patient Protection and Affordable Care Act,**
**42 U.S.C. § 18116**
(On behalf of Plaintiff Cohen-Gilbert as the Personal Representative of
the Estate of Barbara P. Cohen against Defendant Peterson Park Associates)

43.     Plaintiff Cohen-Gilbert incorporates by reference paragraphs 1 to 35.

44.     At all relevant times herein, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act ("Section 1557") prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

45.     As Defendant Peterson Park Associates participates in Medicaid, it is a covered entity subject to compliance with Section 1557.

46.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to

discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

A.  Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

    (1)  that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in their healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

    (2)  that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

    (3)  how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

    (4)  the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

    (5)  the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

    (6)  how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

B.  That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the Americans with Disabilities Act ("ADA"). Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with

applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …." 28 C.F.R. § 35.160(b)(2) (emphasis added).

47.     For the 84 days that Mrs. Cohen was a resident at the Facility, Defendant Peterson Park Associates had a duty under Section 1557 to give primary consideration to Mrs. Cohen's communication preference during Vital Encounters and provide her linguistic access and linguistic presence, including but not limited to SSPs, CDIs, ASL interpreters, either on-site or operational VRI.

48.     For all but two Vital Encounters when it did provide on-site ASL interpreters, Defendant Peterson Park Associates' acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Mrs. Cohen were as effective as communications with others in its healthcare and rehabilitation programs and activities, and Defendant failed to give any consideration, primary or otherwise, to Mrs. Cohen's communication preferences, as Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

49.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964,

Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

50.     Defendant Peterson Park Associates' conduct constituted violations of Section 1557.

51.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

52.     Plaintiff Cohen-Gilbert is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**WHEREFORE**, Plaintiff Cohen-Gilbert prays for the following relief:

A.     A declaration that Defendant operated in a manner which discriminated against Mrs. Cohen, and that Defendant failed to provide linguistic access to Mrs. Cohen as required by law;

B.     An award of compensatory monetary damages;

C.     An award of attorneys' fees and costs; and

D.     Such other relief as the Court deems just.

4094130 (15041.1)

## COUNT III
## NEGLIGENCE
(On behalf of Plaintiff Cohen-Gilbert as the Personal Representative of
the Estate of Barbara P. Cohen against both Defendants)

53.     Plaintiff Cohen-Gilbert incorporated by reference paragraphs 1 to 35 above.

54.     From the time the Facility admitted Mrs. Cohen as a resident on January 13, 2020, Defendants knew Mrs. Cohen was Deaf and low-vision and would require auxiliary aids and services to communicate effectively, particularly during Vital Encounters.

55.     Defendants had a duty to provide skilled nursing care and rehabilitation services to Mrs. Cohen in a manner to avoid daily mental anguish, emotional distress and isolation.

56.     The Illinois Nursing Home Care Act, 210 ILCS 45/1-101 *et seq.*, establishes a standard of care that required Defendants to provide their services and permit Mrs. Cohen to participate in their services in a language that Mrs. Cohen understands.

57.     Defendants breached their duty of care to Mrs. Cohen, either carelessly or intentionally, in one or more of the following ways:

A.      Denied Mrs. Cohen the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of their Facility;

B.      Denied Mrs. Cohen the opportunity to participate in her care, care planning process, her rehabilitation given the absence of auxiliary aids and services to permit Mrs. Cohen to communicate effectively;

C.      Knowingly failed to implement adequate practices or procedures necessary to afford Mrs. Cohen an equal opportunity to participate in their goods, services and facilities to Mrs. Cohen; and

D.      Failed to provide linguistic access, including but not limited to appropriate auxiliary aids and services, including but not limited to, SSPs, ASL sign language interpreters, CDIs or other means to effectively communicate with

Deaf residents, resulting in a negligent or willful withholding of adequate care.

58.     Despite knowledge of Mrs. Cohen's Deaf cultural identity, her deafness and low-vision, Defendants knowingly and intentionally failed and refused to ensure that appropriate auxiliary aids or services were provided to Mrs. Cohen to achieve effective communication.

59.     The harm suffered by Mrs. Cohen was a direct and proximate result of the Defendants' failure to meet their duties of care owed to Mrs. Cohen, and the standard of care applicable to nursing homes under the Nursing Home Act, the Rehabilitation Act and Section 1557 among other standards of care.

**WHEREFORE**, Plaintiff Cohen-Gilbert prays for the following relief against Defendants:

A.     An award of compensatory monetary damages;

B.     An award of reasonable attorneys' fees and costs; and,

C.     Such other relief as the Court deems just.

## COUNT IV
## VIOLATION OF THE ILLINOIS NURSING HOME CARE ACT & SKILLED NURSING AND INTERMEDIATE CARE FACILITIES CODE
## 210 ILCS 45/1-101, *ET SEQ*; 77 IL. ADMIN CODE 300.110 *ET SEQ.*
(On behalf of Plaintiff's Cohen-Gilbert as the Personal Representative of the Estate of Barbara P. Cohen against Defendant Peterson Park Associates)

60.     Plaintiff Cohen-Gilbert incorporates by reference paragraphs 1 to 35 above.

61.     Plaintiff Cohen-Gilbert brings this action under the Illinois Nursing Home Care Act (the "Act"), 210 ILCS 45/1-101, *et seq*., and its implementing regulations, Ill. Admin Code tit. 77, pt. 300, which existed at all relevant times herein.

62.     Mrs. Cohen's private right of action against Defendant Peterson Park Associates, a skilled nursing and intermediate care facility, licensed in the state of Illinois, arises under 77 Ill. Admin. Code, Section 300.3290(a).

63.     Section 300.3290(d) of Title 77 permits court actions under the Act for both injunctive and declaratory relief. Section 3-603 of the Act.

64.     Section 300.3290(e) of Title 77 allows recovery of damages against the nursing home facility, "in addition to and cumulative with any other legal remedies available to a resident" without exhaustion of administrative remedies. Section 3-604 of the Act.

65.     Section 300.3290(c) provides that the licensee shall pay three times the actual damages or $500, whichever is greater, and costs and attorneys' fees to a facility resident whose rights as specified in Part 1 of Article II of the Act are violated. Section 3-602 of the Act.

66.     Defendant Peterson Park Associates violated the Act, and its duty to Mrs. Cohen in several respects, among other actions, including but not limited to those duties specified under the Act as follows:

A.     Failed to develop or implement a Comprehensive Resident Care Plan to adequately communicate with the "active participation" of Mrs. Cohen concerning her needs, as required by Section 3-202a;

B.     Failed to provide a care plan that would attain or maintain the highest practicable level of independent functioning, as required by Section 3-202a-b;

C.     Failed to provide the necessary care to prevent diminution of the resident's abilities in activities of daily living, including hygiene, nutrition, rooming, ambulation and functional communication systems, as required by Section 3-202b(4)-(5), 3-202d(3)-(4).

67.     As a result of Defendant's acts and or omissions, Mrs. Cohen suffered the following damages:

A.     Mental anguish and emotional distress due to Mrs. Cohen's inability to communicate with the Facility's Personnel and the unnecessary prolonged stay at the Facility;

B.     Lack of adequate medical care, lack of informed consent and lack of participation in her healthcare and rehabilitation causing additional stress, frustration and adding to her depression; and

C.     Mrs. Cohen's loss of association, inability to participate in social services, activities and programs at the Facility and the inability to communicate with Plaintiff after the City of Chicago's shelter in place order was issued as result of the COVID – 19 pandemic and Mrs. Cohen's videophone and the Facility's iPad would not function because of insufficient Internet connection at the Facility.

68.     The harm suffered by Mrs. Cohen was a direct and proximate result of the Defendant's failure to meet its duties of care owed to Mrs. Cohen under the standard of care required of skilled nursing and intermediate care facilities under the Act and the Illinois Administrative Code, in addition to other applicable standards of care.

**WHEREFORE**, Plaintiff Cohen-Gilbert prays for the following relief against Defendant Peterson Park Associates:

A.     An award of compensatory monetary damages;

B.     An award of reasonable attorneys' fees and costs; and,

C.     Such other relief as the Court deems just.

## COUNT V
## VIOLATION OF THE REHABILITATION ACT
## 29 U.S.C. § 704
(On behalf of Plaintiff Dickerson against Defendant Peterson Park Associates)

69.     Plaintiff Dickerson incorporates by reference paragraphs 1 to 35 above.

70.     Plaintiff Dickerson brings this action under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794. Plaintiff Dickerson was intentionally and deliberately denied full and equal enjoyment of Defendant Peterson Park Associates' healthcare and rehabilitation services through Defendant's failure to comply with Section 504.

71.     As Defendant Peterson Park Associates receives federal financial assistance in the form of reimbursement from the Medicaid programs as described herein, it is therefore subject to the antidiscrimination provisions of Section 504.

72.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.* Plaintiff Dickerson incorporates and restates here Paragraph 39 above.

73.     Defendant Peterson Park Associates' intentional and deliberate acts and omissions alleged herein violated Section 504 and its implementing regulations in one or more of the following respects:

    A.    Defendant discriminated against Plaintiff Dickerson by denying her the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility;

    B.    Defendant discriminated against Plaintiff Dickerson by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

    C.    Defendant discriminated against Plaintiff Dickerson by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments;

    D.    Defendant discriminated against Plaintiff Dickerson by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Mrs. Cohen where such modifications would not fundamentally alter the nature of the goods, services or facilities; and

28

E.      Defendant discriminated against Dickerson by deliberately and intentionally failing to provide her with appropriate auxiliary aids and services, such as on-site ASL interpreters, operable and effective VRI or other means to effectively communicate with Defendant's physicians, nurses, therapists and other clinical, support and administrative personnel, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden, despite knowing the failure to do so would likely result in harm to Plaintiff Dickerson's federally protected right and failed to act upon that likelihood.

74.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and that the rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §2000(d) *et seq.*] shall be available" for violations of section 504 of the Rehabilitation Act.   By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

75.     Plaintiff Dickerson is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. §794(a), as Defendant Peterson Park Associates' conduct inflicted injury and damages upon Plaintiff Dickerson, including loss of a civil right.

**WHEREFORE**, Dickerson prays for the following relief against Defendant Peterson Park Associates:

A.      A declaration that Defendant operated in a manner which discriminated against Dickerson who required auxiliary aids and services such as ASL interpreters, on-site or through VRI or other effective means to communicate;

B.      An award of compensatory monetary damages;

C.      An award of reasonable attorneys' fees and costs; and,

D.    Such other relief as the Court deems just.

## COUNT VI
## Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116
(On behalf of Plaintiff Dickerson against Defendant Peterson Park Associates)

76.    Dickerson incorporates by reference paragraphs 1 to 35.

77.    At all relevant times herein, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act ("Section 1557") prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

78.    As Defendant Peterson Park Associates participates in Medicaid, it is a covered entity subject to compliance with Section 1557.

79.    Plaintiff Dickerson incorporates and restates herein paragraph 46 above.

80.    For the approximately 36 days that Plaintiff Dickerson was a Deaf aid taking care of Mrs. Cohen at the Facility, Defendant Peterson Park Associates had a duty under Section 1557 to give primary consideration to Plaintiff Dickerson's communication preference during Vital Encounters and provide her ASL interpreters, either on-site or operational VRI.

81.    For all but two Vital Encounters when it did provide on-site ASL interpreters, Defendant's acts and omissions violated Section 1557 and its implementing

regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff Dickerson were as effective as communications with others in their healthcare and rehabilitation programs and activities, and Defendant failed to give any consideration, primary or otherwise, to Plaintiff Dickerson's communication preferences, as Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

82. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

83. Defendant Peterson Park Associates' conduct constituted violations of Section 1557.

84. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

85. Plaintiff Dickerson is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**WHEREFORE**, Plaintiff Dickerson prays for the following relief:

A.     A declaration that Defendant operated in a manner which discriminated against Plaintiff Dickerson, and that Defendants failed to provide appropriate auxiliary aids and services to effectively communicate with Plaintiff Dickerson as required by law;

B.     An award of compensatory monetary damages;

C.     An award of attorneys' fees and costs; and

D.     Such other relief as the Court deems just.

## COUNT VII
## <u>VIOLATION OF THE REHABILITATION ACT</u>
## <u>29 U.S.C. § 704</u>

(On behalf of Plaintiff Rawalji against Defendant Peterson Park Associates)

86.     Plaintiff Rawalji incorporates by reference paragraphs 1 to 35 above.

87.     Plaintiff Rawalji brings this action under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794. Plaintiff Rawalji was intentionally and deliberately denied full and equal enjoyment of Defendant Peterson Park Associates' healthcare and rehabilitation services through Defendant's failure to comply with Section 504.

88.     As Defendant Peterson Park Associates receives federal financial assistance in the form of reimbursement from the Medicaid programs as described herein, it is therefore subject to the antidiscrimination provisions of Section 504.

89.     At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.* Plaintiff Rawalji incorporates and restates here Paragraph 39 above.

90. Defendant Peterson Park Associates' intentional and deliberate acts and omissions alleged herein violated Section 504 and its implementing regulations in one or more of the following respects:

A. Defendant discriminated against Plaintiff Rawalji by denying her the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at its Facility;

B. Defendant discriminated against Plaintiff Rawalji by denying her the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of its Facility;

C. Defendant discriminated against Plaintiff Rawalji by offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments;

D. Defendant discriminated against Plaintiff Rawalji by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Mrs. Cohen where such modifications would not fundamentally alter the nature of the goods, services or facilities; and

E. Defendants discriminated against Plaintiff Rawalji by deliberately and intentionally failing to provide her with appropriate auxiliary aids and services, such as on-site ASL interpreters, operable and effective VRI or other means to effectively communicate with Defendants' physicians, nurses, therapists and other clinical, support and administrative personnel, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden, despite knowing the failure to do so would likely result in harm to Plaintiff Rawalji's federally protected right and failed to act upon that likelihood.

91. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. §794(a)(2), states that the "remedies, procedures and that the rights set forth in Title VI of the Civil Rights Act of 1964 [42 U.S.C. §2000(d) *et seq.*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary

damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

92.     Plaintiff Rawalji is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. §794(a), as Defendant Peterson Park Associates' conduct inflicted injury and damages upon Plaintiff Rawalji, including loss of a civil right.

**WHEREFORE**, Plaintiff Rawalji prays for the following relief against Defendant Peterson Park Associates:

A.     A declaration that Defendant operated in a manner which discriminated against Plaintiff Rawalji who required auxiliary aids and services such as ASL interpreters, on-site or through VRI or other effective means to communicate;

B.     An award of compensatory monetary damages;

C.     An award of reasonable attorneys' fees and costs; and,

D.     Such other relief as the Court deems just.

### COUNT VIII
### Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116
(On behalf of Plaintiff Rawalji against Defendant Peterson Park Associates)

93.     Plaintiff Rawalji incorporates by reference paragraphs 1 to 35.

94.     At all relevant times herein, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act ("Section 1557") prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply

to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

95.     As Defendant Peterson Park Associates participates in Medicaid, it is a covered entity subject to compliance with Section 1557.

96.     Plaintiff Rawalji incorporates and restates herein paragraph 38 above.

97.     For the approximately 36 days that Plaintiff Rawalji was a Deaf aid taking care of Mrs. Cohen at the Facility, Defendant Peterson Park Associates had a duty under Section 1557 to give primary consideration to Plaintiff Rawalji's communication preference during Vital Encounters and provide her ASL interpreters, either on-site or operational VRI.

98.     For all but two Vital Encounters when it did provide on-site ASL interpreters, Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff Rawalji were as effective as communications with others in its healthcare and rehabilitation programs and activities, and Defendant failed to give any consideration, primary or otherwise, to Plaintiff Rawalji's communication preferences, as Defendant was legally required to do under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

99.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section

1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

100. Defendant Peterson Park Associates' conduct constituted violations of Section 1557.

101. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002). Plaintiff is entitled to compensatory damages.

102. Plaintiff Rawalji is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**WHEREFORE**, Plaintiff Rawalji prays for the following relief:

A. A declaration that Defendant operated in a manner which discriminated against Plaintiff Rawalji, and that Defendant failed to provide appropriate auxiliary aids and services to effectively communicate with Plaintiff Rawalji as required by law;

B. An award of compensatory monetary damages;

C. An award of attorneys' fees and costs; and

D. Such other relief as the Court deems just.

**PLAINTIFFS DEMANDS TRIAL BY JURY**

Dated: November 2, 2021

**Helene Cohen-Gilbert, Plaintiff, as the Personal Representative of the Estate of Barbara Cohen, Deceased; and Roberta Dickerson and Ana Rawalji, individually.**

By: /s/ *Jennifer M. Sender*

One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Andrés J. Gallegos II (ARDC No. 6337849)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
agallegosii@rsplaw.com

4094130 (15041.1)